UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JON PATRICK KITTLE,

        Plaintiff,

v.                                   Case No. 2:11-cv-97
                                      HON. ROBERT HOLMES BELL

HARRIETT SQUIER, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

     Prisoner Jon Patrick Kittle filed this lawsuit under 42 U.S.C. § 1983 against
defendants Dr. Harriet Squier, Dr. Jeffrey Stieve, Dr. Padmaja Vemuri, Rae Ann Brand, and
Dr. Timothy Stallman.[1]  Plaintiff's complaint alleges that Defendants violated his Eighth
Amendment rights by denying him necessary surgery to correct a painful bunion problem and heel
spur problem on his feet and by failing to provide him with proper shoes.  Plaintiff complains that
although prescribed tennis shoes helped his heel spurs, the shoes did nothing for his bunion problem
and over the counter pain medication no longer provide relief.  Plaintiff claims that he was examined
on April 1, 2009, by Dr. Scuccimarri who informed plaintiff that he needed bunion surgery.  This
was confirmed on plaintiff's visit to an orthopedic specialist.  However, on May 22, 2009, Dr.
Vemuri informed plaintiff that his request for surgery was denied because it cost too much money.
Dr. Vemuri stated that they were not going to approve the surgery and there was nothing that he

_____

    [1]Plaintiff also named several John or Jane Doe defendants.  However, because these individuals
were never specifically identified or served, they are not properly parties to this action.

could do for plaintiff. Plaintiff believes that someone at Prison Health Services denied his surgery request. Plaintiff does not know the name of that person, and names instead defendant John or Jane Doe. After plaintiff continued to complain, he was prescribed pain medication. Plaintiff was transferred to Chippewa Correctional Facility in early 2010. On July 29, 2010, plaintiff mailed a letter to defendant MDOC Chief Medical Officer Jeffrey Stieve to obtain the name of the person who denied the surgery request. Plaintiff complains that Dr. Stieve is responsible for monitoring the contract with Health Care Services for medical care that is provided to prisoners. Dr. Stieve never responded to plaintiff's request and took no action to ensure that plaintiff was provided proper shoes until he could obtain surgery.

On October 6, 2010, plaintiff was examined by Dr. Stallman who informed plaintiff that surgery was necessary, and that he would make a surgery request. Plaintiff alleges that on October 8, 2010, Dr. Squier denied this second surgery request as not medically necessary. Dr. Stallman told plaintiff that he disagreed with that decision.

Plaintiff complains that on October 26, 2010, he was provided shoes that did not fit by nurse Patricia R. Lamb. Plaintiff alleges that he sent a letter to defendant John/Jane Doe of Prison Health Services demanding the name of the individual who denied his request for bunion surgery. John/Jane Doe never replied to plaintiff's letter.

On November 9, 2010, plaintiff met with defendant Rae Ann Brand and explained to her that she did not properly perform her job of obtaining the right shoes for plaintiff. Defendant Brand just rolled her eyes and walked away from plaintiff. Plaintiff states that defendant Brand advised plaintiff that she ordered proper obtuse bunion shoes for plaintiff and that she would check to see when they would arrive or re-order a new pair if necessary. Plaintiff stated that Dr. Stallman

ordered plaintiff a shoe on November 10, 2010, and on November 13, 2010. Although initially approved, defendant John/Jane Doe overturned the approval and denied plaintiff a new shoe.

On January 19, 2011, Dr. Stallman prescribed plaintiff a different pain medication. Plaintiff complains that the medication does not reduce his pain. Plaintiff received the shoes previously ordered by defendant Brand, but they were simply standard state issue oxfords. Plaintiff claims that Defendants violated his rights under the Eighth Amendment and seeks damages and equitable relief.

On March 20, 2012, the court dismissed Defendants Stieve and Squier from this action for failure to exhaust administrative remedies. Currently before the court is the Motion for Summary Judgment filed by Defendants Vemuri, Stallman, and Brand pursuant to Fed. R. Civ. P. 56 (docket #119). Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

- 3 -

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims they did not act with deliberate indifference to a serious medical need. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In support of the motion for summary judgment, Defendants attach copies of relevant portions of Plaintiff's medical record, as well as other related documents.  A review of the record shows that on April 24, 2009, Plaintiff was referred to an outside podiatrist, Matthew Page, D.P.M., who recommended that Plaintiff have a bunionectomy.  *See* Defendants' Exhibit A-1, pp. 3-7, docket #122-1.  The recommendation was forwarded to Prison Health Services Utilization Manager Dr. Harriet Squier by Defendant Vemuri.  *Id.* at pp. 10-11.  According to MDOC Policy Directive 03.04.100, a corrective surgery such as a bunionectomy may only be authorized for the primary purpose of restoring function and only if approved by the Chief Medical Officer (CMO) or his or her designee.  *See* Defendants' Exhibit A-2, PD 03.04.100 ¶ QQ, docket #119-2.  Dr. Squier reviewed the recommendation and did not approve surgery, opting to continue a conservative approach to Plaintiff's care, which included tennis shoes and using a pumice stone to address the calluses caused by the bunions.  *See* Defendant Vermuri's affidavit, Exhibit A, ¶ 9, and Exhibit A-1, p. 13.  In light of the potential complications and healing difficulties associated with foot surgery, Defendant Vemuri concurred with Dr. Squier's alternative treatment plan (ATP).

Plaintiff was subsequently provided with over-the-counter pain medication and athletic shoes to alleviate his discomfort.  In addition, Plaintiff was permitted to use a pumice stone on any calluses.  Exhibit A, ¶ 10.  On October 7, 2009, Plaintiff was transferred to the Newberry Correctional Facility (NCF), and continued to be treated in accordance with the ATP.  Exhibit A, ¶ 11, Exhibit A-1, pp. 14-18.  On February 10, 2010, Plaintiff was transferred to the Chippewa Correctional Facility (URF).  On April 5, 2010, Plaintiff was seen by Nurse Kathleen F. Hampton, R.N., who noted:

> Bunions apparent outer aspect of great toes bilaterally with increased
> pinkness and tenderness. Shoes stretched out at site of bunion. No
> open areas. Great toe slightly sitting on next toe both feet. States
> problem is worsening. Feet flat.

Nurse Hampton also noted that although Plaintiff was experiencing tenderness in his feet, he had palpable distal pulses, he did not have pain with movement, his sensation was intact, he had normal range of motion, his toes were warm to the touch, his gait was normal, and he did not have numbness or swelling. Plaintiff was provided with arch supports to treat his foot pain. Exhibit A, ¶ 12, Exhibit A-1, pp. 19-21.

On September 17, 2010, Plaintiff was examined by Defendant Brand, who noted that Plaintiff had redness on his bunions, but saw no sign of open sores or other evidence of degeneration of his bunion condition requiring significant medical attention. Defendant Brand submitted a request to the Regional Medical Officer (RMO) for Plaintiff to be authorized to wear athletic shoes. Defendant Brand's Affidavit, Exhibit C, ¶ 7, Exhibit A, ¶ 13, Exhibit A-1, pp. 22-23. On October 6, 2010, Defendant Stallman saw Plaintiff and noted that Plaintiff had minimal pain. However, "out of an abundance of caution," Defendant Stallman re-submitted Dr. Page's recommendation of a bunionectomy for Plaintiff. Defendant Stallman's Affidavit, Exhibit B, ¶ 7, Exhibit A, pp. 25-28. This request was declined by Dr. Squier, who noted that surgery was not medically necessary for Plaintiff at that point. Thereafter, Plaintiff continued to be treated in accordance with the ATP. Defendant Stallman ordered replacement tennis shoes for Plaintiff, as well as bunion pads to alleviate any discomfort and a foot basin for Plaintiff to soak his feet. Exhibit B, ¶¶ 8-10, Exhbit A-1, pp. 29-34.

On October 26, 2010, Plaintiff was examined by a nurse, who noted that Plaintiff did not have open sores on his feet and that his capillary refill was normal, indicating that his circulation

was good. Plaintiff was fitted for and provided with canvas slip-on shoes with cushioned insoles. Exhibit A, ¶ 18, Exhibit A-1, p. 35. On November 4, 2010, Plaintiff complained to Defendant Brand that his canvas shoes hurt too much to wear and requested that his old tennis shoes be returned to him. Defendant Brand noted that Plaintiff's skin was pink, but that there was no open area or any sign of infection. Plaintiff's tennis shoes were re-issued to him at his request. Exhibit A-1, p. 36.

On November 9, 2010, Defendant Brand saw Plaintiff for a complaint that his MDOC issued tennis shoes were too uncomfortable to wear. Defendant Brand noted no change in the condition of Plaintiff's feet and offered him "obtuse state shoes" to accommodate his bunions. Plaintiff was willing to try them, but states that he tried the shoes in the past and they did not work. Exhibit A-1, pp. 38-39, Exhibit C, ¶ 9. On November 10, 2010, Plaintiff was seen by Defendant Stallman and asked for Riddell Axt 2E 10 W cross trainers. Defendant Stallman noted that Plaintiff's pain was minimal, but submitted Plaintiff's request to the RMO in an effort to make Plaintiff more comfortable. Exhibit B, ¶¶ 9-11, Exhibit A-1, pp. 41-42. This request was initially approved, but when it was noted that Plaintiff already had tennis shoes ordered, the request was deferred. Exhibit A-1, pp. 43-44. On December 23, 2010, replacement insoles were ordered for Plaintiff as he reported that his had been stolen. Exhibit A-1, p. 45.

On January 19, 2011, Plaintiff requested Riddell athletic shoes for his bunions. Defendant Brand told Plaintiff that the obtuse toed shoes had been ordered. Exhibit A-1, p. 47. Plaintiff received his obtuse toed shoes on February 2, 2011. *Id.* at p. 48. On February 3, 2011, Plaintiff complained that the shoes were causing his left great toe nail to split. The medical professional who examined Plaintiff noted no crack in his nail. *Id.* at p. 49. Plaintiff continued to complain of pain caused by his shoes and on February 16, 2011, his feet were traced so that a new pair of shoes could be specially made to fit Plaintiff's feet. *Id.* at pp. 50-53, Exhibit A, ¶ 29. On

May 27, 2011, Plaintiff received the shoes, which were made of soft leather and have soft soles and cushioned inserts. Plaintiff indicated that the shoes would "work for now." Exhibit A-1, p. 56, Exhibit A, ¶¶ 30-31.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). This case is factually distinguishable from the situation in *Moore v. Cheatham, et al.*, No. 13-1299 (6th Cir. Jan. 13, 2014), which was recently addressed by the Sixth Circuit. In *Moore*, the plaintiff, a prisoner, suffered from a hydrocele for a number of years and was treated mainly with an order for "scrotal support." On December 1, 2008, Moore was taken to an off-site emergency room and then another hospital with a painful and swollen testicle. A urologist noted that Moore had an immense hydrocele and ordered medication to treat his pain and fever. The urologist advised the prison that he could perform a hydrocele repair when Moore's fever was gone. Moore was then returned to the prison. Moore's medical records show that he was seen by a nurse on December 3, 2008, and again on December 8, 2008, and that he was given pain medication and antibiotics as ordered by the doctor. On December 10, 2008, Moore was seen by a doctor who found that his hydrocele was "larger than a grapefruit." Moore was then sent to the hospital, where the inpatient review report stated that Plaintiff's left hemi-scrotum was the size of a volleyball. On December 11, 2008, Moore underwent surgery to repair the hydrocele. In reversing the district court's grant of summary judgment, the Sixth Circuit noted that a testicle swollen to the size of a volleyball, or even a grapefruit, is obviously a condition requiring the attention of a physician. The Sixth Circuit stated:

> The defendants do not suggest that they were unaware of the doctor's orders or of Moore's pain and requests for health services. Given the severity of Moore's condition, a refusal to provide medication and

timely treatment could lead a reasonable trier of fact to conclude that prison officials exposed Moore to "undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009).

*Moore v. Cheatham*, No. 13-1299 (6th Cir. Jan. 13, 2014).

As noted above, Plaintiff's sole complaint is that Defendants would not authorize a bunionectomy. Both Plaintiff's medical record and Defendants' affidavits show that Plaintiff received significant medical attention for his complaint of bunions, that his condition was carefully monitored, and that Defendants considered both Plaintiff's condition and the risks and potential complications associated with foot surgery in determining Plaintiff's treatment plan. In addition, there is no indication that the treatment plan caused Plaintiff to suffer needlessly. In fact, the record shows that Defendants went to great lengths to provide Plaintiff with proper footwear and to address his discomfort. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, the court concludes that Defendants are entitled to summary judgment.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendant's motion for summary judgment (Docket #119) be granted and that this case be dismissed in its entirety. In addition, should the court adopt the report and

recommendation in this case, Plaintiff's pending motions (docket #128, #129, and #133) are properly denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: January 16, 2014

- 11 -